UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEKRIE BERIHUN AYALEW,

Petitioner,

v.

MATTHEW PUTRA et al.,

Respondents.

Case No. 1:26-cv-2299

Honorable Robert J. Jonker

# OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I. Procedural History

The habeas petition challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.7.) In an order entered on August 13, 2026, the Court directed Respondent to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 5.) Respondent filed his response on August 18, 2026, (ECF No. 6), and Petitioner filed his reply on September 8, 2026, (ECF No. 10).

## II. Relevant Factual Background

Petitioner is a native and citizen of Ethiopia. (Suriano Decl. ¶ 4, ECF No. 6-1, PageID.32.) On March 24, 1986, Petitioner was admitted to the United States as a Lawful Permanent Resident. (*Id.* ¶ 5.) Petitioner lost that status after sustaining multiple criminal convictions. In particular, the former Immigration and Naturalization Service (INS) arrested Petitioner on February 19, 1998, and charged him as removable under Section 237(a)(2)(B)(i) of the Immigration and Nationality Act (INA) after Petitioner sustained three criminal convictions. (*Id.* ¶ 9.)[1]

On June 2, 1998, an Immigration Judge with the Detroit Immigration Court ordered Petitioner removed to Ethiopia. (*Id.* ¶ 10; Pet., ECF No. 1, PageID.4.) Petitioner appealed that decision to the Board of Immigration Appeals (BIA). (Suriano Decl. ¶ 11, ECF No. 6-1, PageID.32; Pet., ECF No. 1, PageID.4.) On November 30, 1998, the BIA affirmed the decision of the Immigration Court. (Suriano Decl. ¶ 12, ECF No. 6-1, PageID.32; Pet., ECF No. 1, PageID.4.) Despite the final order of removal, U.S. Immigration Officials released Petitioner from custody on an Order of Supervision on March 22, 2000. (Suriano Decl. ¶ 13, ECF No. 6-1, PageID.33.) On November 5, 2007, United States Border Patrol agents arrested Petitioner; however, Petitioner was not removed from the United States. (*Id.* ¶¶ 15–19.)[2] On February 13, 2009, Petitioner was again released from custody on an Order of Supervision. (*Id.* ¶ 19.)

On May 11, 2026, ICE agents arrested Petitioner in Grand Rapids, Michigan. (*Id.* ¶ 32, PageID.34.) A week later, the Detroit ICE office submitted a travel document request to ICE Headquarters and was later informed that the request had been forwarded to the Ethiopian

[1] The convictions were for 1) retail fraud 2d degree; 2) possession of cocaine; and 3) delivery of cocaine. (*Id.* ¶¶ 6, 8.)

[2] The arrest occurred in Buffalo, New York, near the international border. *Id.* Petitioner was originally charged criminally with unlawful reentry but the charge was ultimately dismissed. *Id.*

Embassy. (*Id.* ¶ 33.)[3] The Department of Homeland Security (DHS) served Petitioner with a Notice of Revocation of Release and conducted an informal interview regarding the revocation on June 20, 2026, forty days after Petitioner's re-detention. (*Id.* ¶ 35.)

Petitioner filed this proceeding on August 10, 2026. He remains subject to a final order of removal, but he argues he is nonetheless entitled to habeas relief on both due process and *Accardi* grounds. Respondents disagree.

## III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## IV. Merits Discussion

### A. Petitioner's Due Process Challenge to Continued Detention

The parties agree that Petitioner is subject to a final order of removal and that his present detention is governed by 8 U.S.C. § 1231. Petitioner nevertheless contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. Section 1231(a)(6) authorizes the Government to detain certain noncitizens beyond the initial 90-day removal period. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that this authority extends only for a period reasonably necessary to accomplish removal. *Id.* at 699–701. To assist courts in

---

[3] As of August 18, 2026, the Detroit ICE office was waiting on the Ethiopian Embassy to issue a passport for Petitioner. (*Id.* ¶ 40, PageID.35.)

assessing the reasonableness of continued detention, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701. After that period, if a petitioner provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id.*; *see also Martinez v. LaRose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

Here, Petitioner was returned to ICE custody on May 11, 2026, and has been detained for less than six months. (Suriano Decl. ¶ 32, ECF No. 6-1, PageID.34.) Although Petitioner references his earlier periods of immigration detention, those were separated by lengthy spans of supervised release, and the Court finds no basis to aggregate them for purposes of overcoming the six-month presumption. Moreover, the record reflects that ICE submitted a travel document request to Ethiopia in May 2026, which remained pending as of Respondents' August 18, 2026, response. (Suriano Decl. ¶¶ 33, 40, ECF No. 6-1, PageID.34–35.) Petitioner has been subject to a removal order for many years, but the present record does not establish the absence of a reasonably foreseeable removal. *See Martinez*, 968 F.3d at 565.

Accordingly, Petitioner has not established that his continued detention exceeds the period reasonably necessary to effectuate his removal, and the Court will deny relief on Grounds Two and Three. The Court recognizes, however, that continued detention may eventually become unreasonable if the Government's efforts to secure removal fail to bear fruit. *See Zadvydas*, 533 U.S. at 701. Petitioner may pursue a new habeas petition if circumstances materially change. This conclusion does not resolve Petitioner's claims in Grounds One and Four that ICE failed to comply

with the procedural requirements governing revocation of his release, to which the Court turns next.

**B. Regulatory Framework Governing Revocation of Release**

The Government has promulgated regulations governing the detention, release, and re-detention of noncitizens subject to final removal orders. *See* 8 C.F.R. §§ 241.4, 241.13. Both provisions impose procedural requirements in revocation cases requiring notice to the non-citizen of the reasons for detention and the opportunity for at least an informal interview to address the reasons. Section 241.4(l)(1) calls for the interview "promptly after his or her return to Service custody." The regulations also contemplate further custody review at reasonable intervals. Here, the Government's revocation notice identifies § 241.4(l) as the basis for revocation and cites Petitioner's failure to comply with his reporting obligations. (ECF No. 6-2, PageID.37.) Petitioner asserts that the government violated both procedural due process and the *Accardi* doctrine by failing to comply with the regulations, and in particular failing to provide timely notice of and a prompt opportunity to contest the basis for re-detention.

1. **The Governing Legal Principles**

The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. U.S. Const. amend. V. Its protections extend to non-citizens within the United States, including those whose presence is unlawful. *Zadvydas*, 533 U.S. at 693. The Supreme Court has long recognized that freedom from physical detention "lies at the heart of the liberty" protected by the Due Process Clause. *Id.* at 690. Where an individual has been released subject to conditions, the conditional liberty may warrant constitutional protection before it is revoked. *See Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972); *Young v. Harper*, 520 U.S. 143, 147–48 (1997). Due process is flexible and calls for only the protections appropriate to the

particular circumstance. *Morrissey*, 408 U.S. at 481. At its core, due process requires notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). To the extent Petitioner had a protected liberty interest in continued conditional release pending implementation of the final order of removal, the regulations governing the release specify procedures that fully protect any due process interests.

Petitioner also invokes the *Accardi* doctrine, which generally requires federal agencies to follow their own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954). As the Sixth Circuit has explained, "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Regardless of what specific protections procedural due process might mandate in the abstract for the liberty interest of a non-citizen on conditional liberty pending implementation of an undisputed final order of removal, the agency itself has promulgated some regulations for this situation. And Petitioner says when Respondents fail to comply with the procedural protections of their own regulations, release under *Accardi* is appropriate. There is case law that accepts Petitioner's position. *Ebu v. Tindall*, No. 3:25-CV-779-RGJ, 2026 WL 252899, at *5 (W.D. Ky. Jan. 30, 2026) (collecting cases).

But a proper application of *Accardi* requires more than simply reciting the general principle that agencies must follow their own rules. There are fair and open questions about the particular doctrinal underpinnings of *Accardi* and what the chosen theory means in practice. *See* Prof. Thomas W. Merrill, *The Accardi Principle*, 74 Geo. Wash. L. Rev. 569, 603 (2006). This is especially significant in assessing the appropriate remedy for any *Accardi* violation in the habeas context. Habeas corpus is, at its core, governed by equitable principles. *See Nwosu v. Warden, Fla. Soft Side S.*, 832 F. Supp. 3d 1222, 1232 (M.D. Fla. 2026) (citing *Munaf v. Geren*, 553 U.S.

674, 693 (2008) ("The question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised.")). Release may not always be the required, or even the most appropriate remedy. The most "natural remedy for a procedural shortcoming is a procedural fix." *Id.* *See also Wilson*, 378 F.3d at 550 (remanding an agency decision for failure to observe a required procedural safeguard). An order requiring the agency to cure any procedural failure to comply with its own rules may be more appropriate than an unqualified order of release, especially when the fundamental propriety of detention pending implementation of a final order of removal is not an issue. *Cf. Nwosu, supra.*

**2. Application to this Case**

ICE returned Petitioner to custody on May 11, 2026, but did not provide notice of revocation and an informal interview until June 20, 2026, approximately six weeks later. (Suriano Decl. ¶¶ 32, 35, ECF No. 6-1, PageID.34.) It is difficult to characterize a six-week delay as "prompt," at least without some agency explanation. *See Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165 (S.D. Cal. 2025).

The record here does contain hints of a potential explanation. For example, within just a week of taking Petitioner back into custody, authorities initiated the process of obtaining the travel documents necessary to effectuate Petitioner's final order of removal. (Suriano Decl. ¶ 33.) Imminent removal would provide a basis for re-detention wholly independent of Petitioner's multiple failures to report over the years. (Suriano Decl. ¶¶ 34, 36, 39.) In addition, the record suggests Petitioner was unwilling to cooperate in signing various documents related to his removal. (Suriano Decl. ¶ 35.) The record also contains information sufficient to support the reasonableness of the ultimate decision to detain Petitioner as a flight risk and danger to the community. (Suriano Decl. ¶ 38.) His three prior criminal convictions, including two involving controlled substances,

and his charge (ultimately dismissed) for illegal reentry near Buffalo, New York, provide ample support, especially when combined with the lengthy period of non-reporting. (Suriano Decl. ¶¶ 15-16, 34, 36, 39.)

But Respondents do not develop any of these hints by way of explanation on the record of the case. Instead, they acknowledge that Petitioner did not receive the required notice and informal interview until approximately six weeks after his arrest, and then dismiss the significance of that delay because Petitioner ultimately received both. (ECF No. 6, PageID.27.) That position misses the point. The regulations do not merely require notice and an interview at some unspecified future date. They require notice upon revocation and an informal interview *promptly* after return to custody. 8 C.F.R. § 241.4(l)(1). Those requirements serve an important purpose in avoiding any potential due process problem. They also serve as the agency's own benchmark of regulatory good manners. After all, after living in the community for nearly 15 years, a non-citizen suddenly returned to custody is naturally overflowing with questions and understandably upset no matter how well-justified the agency was in taking the action. Yet Respondents offer no explanation for why it took approximately 40 days to afford Petitioner those protections. That kind of unexplained delay and shoulder shrug dismissal breeds distrust and cynicism in addition to flouting due process and regulatory protections. The Government cannot disregard mandatory procedural safeguards and then dismiss its noncompliance as inconsequential simply because it eventually provided the process that was required in the first place. The unexplained delay in this case failed to comply with the procedural requirements governing Petitioner's return to custody.

The procedural deficiencies in this case do not, however, warrant immediate release from custody, the remedy Petitioner seeks. As already noted, a procedural violation does not establish that the Government lacks substantive authority to detain an individual, or that release is the most

appropriate remedy. The Middle District of Florida recently addressed this distinction in *Nwosu, supra.* There, the court concluded that ICE's failure to provide a required informal interview violated the petitioner's procedural rights but declined to order immediate release. Instead, the court directed ICE to provide the omitted interview, recognizing that the appropriate response to the procedural deficiency was to require the Government to comply with its obligations rather than to eliminate its statutory detention authority. *Id.* at 1232–35**.**

That reasoning is persuasive. Where the Government has failed to afford a procedure required by law, an order compelling that procedure may provide more appropriate relief than immediate release from custody. In *Nwosu*, the Court had to order the procedural remedy because the government had not yet provided it. But here Petitioner has already received the notice and informal interview required by the regulations, albeit belatedly. The record establishes that ICE provided notice of revocation and conducted an informal interview on June 20, 2026. (Suriano Decl. ¶ 35, ECF No. 6-1, PageID.34–35.) The interview documentation reflects that Petitioner was afforded an opportunity to respond to the stated reasons for revocation but declined to provide a written statement or supporting documentation. (ECF No. 6-2, PageID.39.)

The record also reflects that ICE subsequently conducted a post-order custody review on July 10, 2026, and served Petitioner with a written decision to continue detention on August 2, 2026. (Suriano Decl. ¶¶ 37–38, ECF No. 6-1, PageID.35.) That decision identified danger to the community and a significant risk of flight as the grounds for continued detention. (ECF No. 6-3, PageID.41.) Although the Court does not determine whether that review satisfied every requirement of § 241.4(l)(3), the subsequent review and decision are relevant in evaluating whether release from custody is equitably warranted for the earlier procedural delay in providing notice and an interview. As the Court has already noted, the record contains evidence that reasonably

supports a decision to continue detention. Further, the record clearly establishes that the government is working to implement Petitioner's final order of removal, which also weighs against any equitable basis for immediate release.

So even acknowledging that the government failed to provide the "prompt" notice and hearing required by regulation, or a reasonable explanation for failing to do so, the Court declines to order Petitioner's immediate release based solely on those procedural deficiencies. Habeas corpus is principally concerned with the lawfulness of confinement, not the imposition of a punitive consequence upon the Government for a past procedural violation. *See Munaf*, 553 U.S. at 693; *Walker v. Wainwright*, 390 U.S. 335, 336 (1968). Here, Respondents have already cured their procedural deficiencies on their own, and an order of immediate release solely because the interview was untimely would go beyond what is necessary to address the procedural deficiency. A different record may require a different result.

Accordingly, the Court concludes that the Petitioner has failed to establish a basis in habeas for the immediate release from custody that he seeks. He may, of course, file a new request if circumstances create a new basis to challenge his continued or extended confinement.

## V. Conclusion

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: October 27, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge